**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 24-cr-100 (ACR)** |
| v. | : | |
| | : | |
| NATALIE BEYELER, | : | |
| | : | |
| Defendant | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Natalie Beyeler has pleaded guilty to two second degree misdemeanors, violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Beyeler to 14 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.      **Introduction**

Defendant Natalie Beyeler, 70 years old and a medical doctor, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer

of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Beyeler pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and § 5104(e)(2)(G). The government's recommendation is supported by the defendant's actions on that day, namely, walking up through the chaos of the West Front, walking into the U.S. Capitol building and being escorted out of the building by police, only to return and reenter the building minutes later. Beyeler spent 30 minutes walking in and out of the building, as the riot raged around her.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Beyeler's crime support a sentence of 14 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF Dkt 6 (Statement of Offense) at 1-3.

### *Defendant Beyeler's Role in the January 6, 2021 Attack on the Capitol*

Beyeler and her friend Thomas Blackwood, charged separately in 24-cr-303-ACR,[2] spent the night in Washington, D.C. on January 5, 2021.

On January 6, 2021, Beyeler and Blackwood attended the Trump Rally at the Ellipse, near the Washington Monument. After the rally, Beyeler and Blackwood walked to the Capitol. Throughout that day, Beyeler or Blackwood took turns carrying their Trump flag.



*Image 1 – Blackwood (holding a flag) and Beyeler walking away from the Washington Monument towards the Capitol[3]*

---

[2] Blackwood is also scheduled to be sentenced by this Court on November 18, 2024.
[3] YouTube | Dan Noakes (Bluebpage) | [youtube] 2021 01 6 March to Capitol 2X-cUuZecb4U8k.mkv 2021 01 6 March to Capitol 2X
https://www.youtube.com/watch?v=cUuZecb4U8k&t=1133
Timecode: 18:55

Once arrived at the Capitol grounds, Beyeler walked onto the grounds, and then up the stairs at the West Front.



*Image 2 – Beyeler walking up the steps at the West Front[4]*

Blackwood and Beyeler walked with thousands of other rioters over multiple downed barricades, towards the Capitol building.

---

[4]YouTube | The Allen Report (UC5NJlt5YSHA62ozQbD_fe8Q) | [youtube] Cop Vs The American People!!-70SspWNp4Bg.mp4 Cop Vs The American People!! https://www.youtube.com/watch?v=70SspWNp4Bg&t=5 Timecode 0:04



*Image 3 - Beyeler and Blackwood*
*standing on the West Terrace[5]*

Beyeler could see a line of police officers arrayed along the Upper West Terrace.



*Image 4 - Beyeler, checking her phone, with a line of police officers behind her[6]*

[5]Video_4951676291540898.mp4 Archive.org Link
https://archive.org/download/Wezxg58PppWWwnGPF/Facebook_video_4951676291.mpeg4
Timecode: 5:53
[6] Facebook | dante.hahn.3 | 10000000_853442725378297_8874452822929150079_n.mp4

Instead of turning around and leaving Capitol grounds, Beyeler and Blackwood entered the U.S. Capitol building. Beyeler entered the Capitol building, knowing that Congress was in session and intending to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

According to video surveillance footage inside the Capitol building, Beyeler and Blackwood first entered through the Parliamentarian Door (also known as the Senate Fire Door) at 2:55 p.m.:



*Image 4 - View from the back of Beyeler, holding the flag, followed by Blackwood entering the U.S. Capitol building at 2:55 p.m.*

---

https://www.facebook.com/dante.hahn.3/videos/10216189261878955 (No longer available)
https://archive.org/download/h2b9SpJNFbm4rCAZn/10000000_853442725378297_.mpeg4
Timecode: 17:52



*Image 5 - View from the front as Beyeler, holding the flag, and Blackwood, holding his phone, entered the U.S. Capitol building at 2:55 p.m.*

Beyeler and Blackwood were stopped by police officers who blocked them from advancing further into the building and required them to turn around and leave the building.



*Image 6 – Beyeler and Blackwood being waved forward and escorted out the door by the police*

Seven minutes later, at 3:02 p.m., Beyeler and Blackwood walked out the same door that they had walked in through:



*Image 7 – Beyeler, holding the flag, and Blackwood being escorted out of the U.S. Capitol Building by police*

Despite being escorted out of the building by police minutes earlier, Blackwood and Beyeler walked past fellow rioters who were climbing in through the window and re-entered the building at 3:10 p.m., this time through the Senate Wing Door with the fire alarm blaring:



*Image 7 – Beyeler and Blackwood walking towards the Senate Wing Door, past a rioter clambering through the window[7]*

---

[7]Court Case Files | Anthony Puma (Anthony Michael Puma) | GEX 3 [11_GH040034].h264.mp4 https://archive.org/details/gex-3-11-gh-040034.h-264 Timecode: 3:30



*Image 8 – Beyeler, with her flag, and Blackwood, with his phone, re-entering the U.S. Capitol building, while other protesters climbed through the broken window*

After re-entering the Capitol building, Beyeler and Blackwood walked to, and then around, the Crypt for approximately 15 minutes:



*Image 9 – Beyeler and Blackwood in the Crypt*

Approximately 30 minutes after they had first entered, Beyeler and Blackwood walked back out through the Senate Wing Door at 3:25 p.m.:



*Image 9 – Beyeler and Blackwood walk out of the Senate Wing Door at 3:25 p.m.*

After leaving the building, Beyeler and Blackwood stood outside the Senate Wing Door and watched the rioting unfold:



*Image 10 – Beyeler, with her flag, and BLACKWOOD standing outside the Senate Wing Door[8]*

---

[8] YouTube | SCNRbot (UCqFdvJdTk5vDqyVS4hRHipg) | [youtube] 4K Footage of Trump Supporters Storm Capitol Building during January 6 Insurrection-8Vh8wPeo6Jk.mkv

Beyeler was very clearly aware of the police presence trying to remove rioters from the area, but she remained on the Upper West Terrace.



*Image 13 – Beyeler, right up next to the police line[9]*

*The Charges and Plea Agreement*

On February 26, 2024, the United States charged Beyeler with a two-count Information with violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). On

---

4K Footage of Trump Supporters Storm Capitol Building during January 6 Insurrection
https://www.youtube.com/watch?v=8Vh8wPeo6Jk&t=1092
Timecode: 18:11

[9] YouTube | [youtube] Trump Wild Rally Washington D.C. - Outside The Capitol Building (Part 06) (V-01) (January 6th, 2021)-Oas2MW0NXiM.mkv
Trump Wild Rally Washington D.C. - Outside The Capitol Building (Part 06) (V-01) (January 6th, 2021) https://www.youtube.com/watch?v=Oas2MW0NXiM&t=146 (No longer available) https://capitol-hill-riots.s3.us-east-1.wasabisys.com/User%20Submissions%20-%20UNSORTED /Content/Trump%20Wild%20Rally%20Washington%20D.C._%20Outside%20The%20Capitol %20Building%20%28Part%2006%29%20%28V-01%29%20%28January%206th%2C%202021%29.mp4
Timecode: 2:25

April 24, 2024, pursuant to a plea agreement, Beyeler pleaded guilty to the two counts in the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Beyeler now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 on each count. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Beyeler's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Beyeler, the

absence of violent or destructive acts is not a mitigating factor. Had Beyeler engaged in such conduct, she would have faced additional criminal charges.

One of the most important factors in Beyeler's case is her repeated decisions to violate the law and aggravate the situation. She walked up the steps on the West Front during a full-blown riot, entered the U.S. Capitol building, was escorted out by the police, and chose to reenter through a different door and wander around the building for 15 minutes.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days incarceration in this matter.

### B. Beyeler's History and Characteristics

Beyeler is a highly educated person who should have known better. After being escorted out by fellow police officers, she did not leave. Instead, she turned around and walked back into the building. And she walked in and out of that building for 30 minutes.

Although Beyeler has performed laudable work, such as being a rural doctor in Alaska, running a non-profit, and joining the Army, none of these activities excuse her criminal conduct on January 6. In fact, her Army background makes her assault on the Capitol and its building even more egregious.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Specific deterrence is necessary here. Beyeler has yet to evince any remorse, much less take any steps to denounce her actions on January 6th, including to the Probation officer who conducted her PSR interview. When asked for a statement by the PSR writer, the Defendant solely "stipulated to the Information provided in the signed Statement of Offense. She made no further statements regarding her involvement in the instant offense." ECF Dkt. 10 (PSR) at ¶ 30. Although

the PSR writer provided her with the opportunity, no sentiment of remorse or contrition was forthcoming.

Beyeler will no doubt cite her age and her employment as mitigation, but neither her age, nor her job stopped her from entering the Capitol grounds and building multiple times on January 6th.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[10] This Court must sentence Beyeler based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Beyeler has pleaded guilty to the two counts in the Information, violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

---

[10] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who entered and exited the Capitol building multiple times, served as law enforcement officers, and/or minimized their criminal activity thereafter.

*United States v. Richard Bryan Watrous*, 21-cr-627 (BAH) is informative. Watrous walked to the Capitol after the Trump rally, entered the U.S. Capitol building and remained for about five minutes. He left, because he recognized that the situation was "fucked up," but then reentered the building. When interviewed by the FBI, he admitted to his presence at the Capitol but minimized his conduct on January 6th. Watrous pled guilty to 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building, and the Court sentenced Watrous to 14 days' incarceration.

Donald Pearston walked to the Capitol after the Trump rally, entered the U.S. Capitol building and saw officers deploy pepper spray, so he walked out of the building. *United States v. Donald Pearston*, 23-cr-454 (JEB). Instead of leaving the Capitol grounds, he instead entered the U.S. Capitol building again through a different door, and only left the building when police ordered the crowd out. Pearston pled guilty to 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building or Grounds, and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building, and the Court sentenced Pearston to 10 days in jail.

Much like Watrous and Pearston, Beyeler entered the building multiple times on January 6th, and remained inside for an extended period of time, until she was kicked out by the police. Because her behavior is analogous to theirs, she should receive a commensurate sentence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is

16

"firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[11] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to

---

[11] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Beyeler must pay $500 in restitution, which reflects in part the role Beyeler played in the riot on January 6.[12] ECF Dkt. 5 (Plea Agreement) at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Beyeler's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF Dkt. 10 (PSR) at ¶ 111.

## VI.    Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing Court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets

---

[12] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). Here, the defendant has not shown an inability to pay, and the Court should impose a fine. *See* U.S.S.G. § 5E1.2(a).

**VII.    Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Beyeler's liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ *Alexandra F. Foster*
Alexandra F. Foster, Esq.
Assistant United States Attorney
D.C. Bar No. 470096
Detailee – D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C.